LEIGHTON *v.* LEWIS.

Opinion delivered November 6, 1916.

CONTRACTS—AGREEMENT FOR "PLOWING AND LEVEE FIXING."—Appellee rented certain rice land to appellant, which appellant was to cultivate. Appellee agreed to furnish water, but if he failed to do so he agreed to pay to appellant "the reasonable value of the plowing and levee fixing" done on the land up to the time notice was given of appellee's inability to furnish water. *Held*, the parties used the word "plowing" in its restricted sense only, that is turning up the soil to prepare it for bearing crops.

Appeal from Arkansas Chancery Court; *Jno. M. Elliott*, Chancellor; affirmed.

*Eugene Lankford*, for appellant.

The question for this court is simply the proper construction of the clause in the contract that should appellee be unable to put down a well, etc., suitable for raising rice, he shall pay the reasonable value of the *plowing and levee fixing.*

1.   Construing the contract under the rule in 74 Ark. 241, plowing includes double discing, harrowing, drilling, etc., as charged for by appellant, and levee fixing includes plowing down old levees and building new ones. Plowing should not be restricted to simply using a turning plow or furrowing the land with a *plow.*

2.   Appellant was also liable for the hauling done.

*John L. Ingram*, for appellee.

All appellant was entitled to was for "plowing, $165.00, and making new levees, $50.00." This was allowed him. He agreed to do the hauling. Appellant was not liable for harrowing, discing, drilling, rolling, etc.—they are not *plowing.* The decree is right but

on cross-appeal appellee should recover for coal $44.00 and $165.00 for plowing.

Hart, J.  Geo. C. Lewis instituted this action in the chancery court against A. C. Leighton to enforce a landlord's lien for rent and supplies.

Lewis and Leighton entered into a written contract whereby the former rented to the latter his farm to be cultivated in rice.  The contract provided that the tenant should prepare the land, plant it, distribute the water, gather and haul the rice to the mill. It further provided that the landlord should pay the expenses of operating the pumping plant, including the salaries of the engineers, fuel, oil, etc., and also pay for the necessary seed rice to sow the farm.

The lease contract also contained the following: "It is understood that the first party is to put down a well and pumping plant, suitable for raising rice on the said place at once.  However, should the first party for any reason fail to get a well suitable to irrigate the said place for rice as aforesaid he shall not be liable in damages in any amount to the second party for such failure.  But he shall pay to the second party the reasonable value of the plowing and levee fixing done on the said place by the said second party up to the time when the second party be notified of such failure."  The material facts are as follows:

The plaintiff attempted to dig a well as required by the contract but was unable to get water to irrigate the one hundred and ten (110) acres of land embraced in the lease contract.  He only got water sufficient to irrigate about thirty acres of the land.  The plaintiff furnished the defendant feed to the amount of $181.30.

The defendant filed a counterclaim to the action and was allowed by the court, $165.00 for plowing 110 acres of land.  The court also allowed him $50.00 for making new levees.  The defendant charged for other items which were not allowed him by the court.  Among them were the following:

Double discing 110 acres at $2.00 per acre . . . $220.00
Plowing down old levees. . . . . . . . . . . . . . . . .  18.00
Dragging ground to level it. . . . . . . . . . . . . .  55.00
Drilling 110 acres at $.50 per acre . . . . . . . . .  55.00
Harrowing 110 acres at $.30 per acre . . . . . . . .  33.00
Rolling 40 acres at $.50 cents per acre . . . . . .  20.00

The chancellor was of the opinion that none of these last mentioned items came within the terms of the contract. He only allowed the defendant $215.00 comprising the items above stated. A decree was entered in accordance with the opinion of the chancellor and the defendant has appealed.

The correctness of the decision of the chancellor depends upon the construction to be given the words, "plowing and levee fixing" as used in the contract. Webster defines a plow as an implement, drawn by horses or other power, for making a furrow in and turning up the earth to prepare it for sowing or planting. The Century Dictionary defines a plow as an agricultural implement drawn by animals or moved by steam power, used to cut the ground and turn it up so as to prepare it for the reception of seeds. To plow is defined by Funk & Wagnalls as to break up or turn up the surface of the land with a plow.

The chancellor considered the word "plow" as used in the contract in its more restricted and literal sense and in this we think he was correct. Double discing is defined by one of the defendant's witnesses as leveling and preparing the ground for a seed bed with a disc after it had been broken up. He defined drilling the 110 acres as planting the rice and said that part of the harrowing was done before the rice was planted and part of it afterwards.

Under the terms of the contract each of the parties to it was to have one half of the rice which was raised. The parties evidently realized that there was a risk to be run in digging the well and provided what expense or burden was to be borne by each one in case the well failed. The landlord was to bear the expense of digging the well and if he failed to get a well suitable to irrigate

the place for rice, he was to pay the tenant the value of the plowing and levee fixing. He failed to get the well and it seems to us that the parties used the word "plowing" in its more limited or more restricted sense in the contract. That is to say they used it in the sense of turning up the soil to prepare it for bearing crops. If the word "plow" is to be considered in its most enlarged sense, the landlord would have had to have borne the whole expense and the tenant would have been out nothing. If that had been the case the parties would likely have used the word putting in the rice, instead of "plowing and levee fixing;" for the words putting in rice would have included everything that was to be done by the tenant.

It follows that the decree will be affirmed.